IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ROBERT WATTS | § | |
| | § | |
| v. | § | A-17-CV-887 LY |
| | § | |
| NORTHSIDE IND. SCHOOL DIST. | § | |
| and MACK EDWARD BREED | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are Northside Independent School District's 12(b)(6) Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (Clerk's Dkt. No. 7); Plaintiff's Response (Clerk's Dkt. No. 8); and Defendant's Reply (Clerk's Dkt. No. 10). The District Court referred these Motions to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Rules.

## I. FACTUAL BACKGROUND

Plaintiff Robert Watts brings claims pursuant to 42 U.S.C. § 1983 against Northside Independent School District and Mack Edward Breed in both his individual and official capacities. Watts' claims arise from a football game he officiated on September 4, 2015, in Marble Falls, Texas. The game was between John Jay High School, which is part of Northside Independent School District and Marble Falls High School. Breed was an assistant football coach at John Jay High School and an employee of NISD. Watts was part of a referee crew from the Austin Chapter of the Texas Association of Sports Officials.

Watts asserts that, shortly before the game ended, Coach Breed, angry at some calls that he disagreed with, directed two John Jay players to hit Watts and "make him pay" for alleged bad calls

and racist statements. Thereafter, two Jay players tackled Watts from behind, knocking him to the ground. Watts alleges he suffered cuts, bruises, abrasions, and a concussion from the hit. Watts brings this § 1983 claim raising a substantive due process claim pursuant to Fourteenth Amendment to the Constitution. Watts asserts that Defendants violated his right to "bodily integrity and personal security." He further asserts that Breed acted with deliberate indifference when he instructed the players to hit him.

Defendant NISD moves to dismiss Watts' claims on three grounds: (1) the state has no constitutional duty to protect individuals from private harm; (2) NISD had no "special relationship" with Watts; and (3) Watts has failed to identify an official policy or custom by the NISD school board which was the moving force behind the alleged Constitutional violation. The Court agrees.

## II. MOTION TO DISMISS STANDARD

Defendants move to dismiss based upon FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008). While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The Supreme Court has explained that a court need not accept as true conclusory allegations or allegations stating a legal conclusion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("mere conclusions[ ] are not entitled to the assumption of truth"). A complaint must contain sufficient factual matter "to state a claim to relief that is

plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### III. ANALYSIS

As noted, Watts brings this lawsuit under 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must "(1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854-55 (5th Cir. 2012). As explained by the U.S. Supreme Court, "the Due Process Clause of the Fourteenth Amendment was intended to prevent government from abusing its power, or employing it as an instrument of oppression" and "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989).

**A.      No Constitutional Violation by State Actor**

First, NISD argues that Watts cannot state a constitutional claim pursuant to 42 U.S.C. § 1983 because his injuries were caused by the actions of John Jay students, who are private actors, and not district officials. Thus, any alleged violation of Watts' due process rights did not occur under color of state law. Watts argues that he is alleging that his injuries were caused by Breed when he encouraged the students to tackle him, and Breed, as an NISD employee, qualifies as a "state actor." Generally speaking, a state's failure to protect an individual from private violence does not constitute a violation of the Due Process Clause sufficient to state a claim under Section 1983.

3

*Covington*, 675 F.3d at 855. The only recognized exceptions to this well-settled principle are the "special relationship exception" and the state-created danger theory. *Id.*

1. **Special relationship exception**

One circumstance in which courts have imposed a duty on state actors to protect an individual from private violence is when a special relationship has been formed between an individual and the government. As the Fifth Circuit explained in *McClendon v. City of Columbia*,

> When the state, through the affirmative exercise of its powers, acts to restrain an individual's freedom to act on his own behalf "through incarceration, institutionalization, or other similar restraint of personal liberty," the state creates a "special relationship" between the individual and the state which imposes upon the state a constitutional duty to protect that individual from dangers, including, in certain circumstances, private violence.

305 F.3d 314, 324 (5th Cir.2002) (quoting *DeShaney*, 489 U.S. at 200). When considering "other similar restraints on personal liberty" it is important to note that "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *DeShaney*, 489 U.S. at 200.

In this case, Watts—an adult refereeing a football game for remuneration—has not stated, and cannot state, a special relationship with Defendants. His freedom to act was in no way limited by NISD or Breed. Watts was at the football game on his own volition. Watts therefore cannot state a § 1983 due process violation based on the special relationship exception. *See, e.g., de Jesus Benavides v. Santos*, 883 F.2d 385, 388 (5th Cir. 1989) (prison guards injured by inmates did not have special relationship because the guards "enlisted, on terms they found satisfactory, and were free to quit whenever they pleased."); *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 522, 529 (5th

Cir. 1994) (no special relationship between a high school and a student fatally wounded by a gunshot fired in the school parking lot after a school dance because the student was at the dance voluntarily).

### 2. State-created danger exception

The other exception to the general rule that § 1983 liability cannot arise out of the wrongdoings of private actors is the state-created danger exception. This doctrine makes the state liable under § 1983 "if it created or exacerbated the danger" of private violence. *Bustos v. Martini Club Inc.*, 599 F.3d 458, 466 (5th Cir.2010). However, the Fifth Circuit "has consistently refused to recognize a 'state-created danger' theory of § 1983 liability even where the question of the theory's viability has been squarely presented." *Beltran v. City of El Paso*, 367 F.3d 299, 307 (5th Cir. 2004). Watts nevertheless asks the Court to deny the motion to dismiss this claim, arguing that while the Fifth Circuit has not recognized the claim, it also has not chosen to affirmatively reject the claim. He further notes that eight of the federal circuits have recognized the theory of liability. Dkt. No. 8 at 6-7. He also points out that, because the Fifth Circuit has not rejected the theory outright, a number of district judges in Texas have entertained the theory at the 12(b)(6) stage. *Id.* at 7.[1]

The Court need not make a final decision on the availability of the state created danger theory here, because even if it were available, Watts has failed to state a claim under that theory. Watts lays out his theory in his response to the motion:

> Here, Coach Breed, the state actor, used his authority to create a dangerous environment for Plaintiff and acted with deliberate indifference to Plaintiff's plight. Clearly, under the admitted facts and circumstances of this matter, Plaintiff is entitled to present evidence that Defendant-state actors created a dangerous environment by

---

[1]Not all district courts have taken this approach. *See, e.g., Estate of Carmichael ex rel. Carmichael v. Galbraith*, 2012 WL 13568, at *3 (N.D. Tex. Jan. 4, 2012) ("[B]ecause the state-created danger exception to *DeShaney* is not recognized in this circuit, the court dismisses [the plaintiff's] § 1983 claim to the extent it is based on an alleged violation of the Due Process Clause of the Fourteenth Amendment.").

> deliberate indifference, thereby creating an opportunity that would not otherwise have existed as follows: Coach Breed told his players "to hit" Plaintiff; and that Plaintiff "needs to pay the price." One of the players stated on national television that Breed told the player to hit Plaintiff. Both players admitted that they knew what they did was wrong, but they did it because they trusted Coach Breed. Coach Breed later admitted that he directed the students to make Plaintiff "pay" the price. This is a clear example of Coach Breed using his authority to create an opportunity that would not otherwise have existed for the players' hit on Plaintiff to occur.

*Id.* at 10-11. What Watts has failed to allege, however, are facts showing that NISD was aware of a specific risk to a known victim, which is a requirement of a state created danger claim. As the Fifth Circuit noted in another case seeking to apply the theory to a school district, to state a claim under the theory a plaintiff must show "the existence of an immediate danger to a known victim." *Doe ex rel. Magee*, 675 F.3d 849, 866 (citation omitted). Simply knowing of a general danger is not enough. *Moore v. Dallas Ind. Sch. Dist.*, 370 Fed. App'x 455, 458 n.1 (5th Cir. 2010). The most Watts has alleged is that Breed deliberately created a dangerous situation for Watts when he instructed the players to hit Watts. He pleads no facts indicating that NISD had any reason to know that Watts was in danger at the game, or that Breed would instruct players to hit a referee, much less Watts. Thus, even if the Fifth Circuit were to recognize the state created danger theory of liability, Watts cannot state a claim under that theory in these circumstances.

### 3. *Monell* Analysis

Perhaps this is another way of saying the same thing, but there is yet another element lacking in Watts' claim—any evidence that NISD had any policy or practice that was the "moving force" behind the constitutional violation alleged. A governmental entity such as NISD may only be held liable for a constitutional violation under § 1983 if its policies or customs caused the constitutional violation. *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978). Watts concedes that he is not alleging any such policy or custom here, but contends that he does not need to do so, because the

state created danger theory does not require such a showing. Dkt. No. 8 at 13. His sole legal support for this claim is the fact that the Fifth Circuit analyzed the state created danger theory separately from the *Monell* issue in the *Doe ex rel. Magee* case. Watts misreads that case. As NISD notes, the state created danger theory is the means by which a plaintiff (in an appropriate case) can demonstrate the existence of a constitutional violation, the first element of a § 1983 claim. To impose liability on a school district like NISD, a plaintiff must still meet the requirements of *Monell*. Watts concedes that he has not pled any facts to establish liability under *Monell*. *Id.* This is no surprise, as it is clear from Watts' pleadings that he contends Breed was a solo actor, and took it upon himself to instruct the players to hit Watts. For this reason as well, dismissal of the claim against NISD is appropriate.[2]

### III. RECOMMENDATIONS

The Court **RECOMMENDS** that Northside Independent School District's 12(b)(6) Motion to Dismiss for Failure to State a Claim (Clerk's Dkt. No. 7) be **GRANTED**, and the suit against Northside Independent School District, and the § 1983 claim against Breed in his official capacity, be **DISMISSED WITH PREJUDICE**.

### IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are

---

[2]Watts has sued Breed in both his official and individual capacity. As he admits in his response, the official capacity claim is redundant of the claim against NISD. "Actions for damages against a party in his official capacity are, in essence, actions against the governmental entity of which the officer is an agent." *Familias Unidas v. Briscoe*, 619 F.2d 391, 403 (5th Cir. 1980). A suit against an official "generally represent[s] only another way of pleading an action against an entity of which the officer is an agent." *Monell*, 436 U.S. at 690 n.55. The dismissal of the claims against NISD therefore also necessitates the dismissal of the official capacity claim against Breed. (Breed has not moved to dismiss the individual capacity claim.)

being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 10th day of May, 2018.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE